[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-12292
Non-Argument Calendar

————————————————

D.C. Docket No. 1:12-cv-03855-TCB

KEITH D. JONES,
FLORESTINE EVANS JONES,

Plaintiffs - Counter Defendants - Appellants,

versus

BANK OF AMERICA, N.A.,

Defendant - Counter Claimant -Appellee.

————————————————

Appeals from the United States District Court
for the Northern District of Georgia

————————————————

(April 25, 2014)

Before TJOFLAT, PRYOR, and FAY, Circuit Judges.

PER CURIAM:

The judgment of the district court is affirmed for the reasons set forth in its

April 19, 2013, Order, attached as Appendix A.

AFFIRMED.

# APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEITH D. JONES and<br>FLORESTINE EVANS JONES,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | CIVIL ACTION FILE<br><br>NUMBER 1:12-cv-3855-TCB |

## O R D E R

This case comes before the Court on Defendant Bank of America, N.A.'s motions for default judgment on its counterclaim [20] and for summary judgment [25], and Plaintiffs Keith D. and Florestine Evans Joneses' motion for a determination as to reasonable attorney's fees [21].

## I.    Background

On March 31, 2004, Plaintiffs purchased land and began building a house at 5115 Northside Drive, NW, Atlanta, Georgia 30327.  Plaintiffs financed the property purchase and construction with BOA.  The house was

completed sometime in early 2008, and soon thereafter Plaintiffs consolidated their acquisition and construction loans and entered into a more conventional loan with BOA.

On April 21, 2008, the parties signed a new loan agreement. The loan was evidenced by a $5 million promissory note executed by Plaintiffs in favor of BOA. The note was collateralized by a security deed conveying to BOA legal title to the Northside property.

On March 25, 2011, the note's maturity date passed without the parties reaching a new agreement and without Plaintiffs' paying the outstanding amount owed under the note. Several months later, on July 22, the parties executed a loan modification agreement, which stated that it was effective as of March 25.

The loan modification agreement extended the maturity date of the note to March 25, 2012, and Plaintiffs agreed therein that the extended date was for the purpose of allowing them to repay the note, whether by sale, refinance or other means. Plaintiffs also had to provide BOA with a copy of the listing agreement evidencing that the property was listed for sale. In addition, Plaintiffs agreed that the loan documents fully expressed the

parties' entire agreement and that they waived any claims and defenses against BOA.

After executing the loan modification agreement, Plaintiffs defaulted by failing to pay BOA the amounts due under the note and to pay property taxes, the latter of which resulted in liens being filed against the property. By letters dated October 11, 2011, and February 24, 2012, BOA notified Plaintiffs that they were in default. After the loan matured on March 25, 2012, BOA attempted to negotiate another extension with Plaintiffs on the condition that Plaintiffs pay the outstanding property taxes.

Despite indicating that they accepted BOA's proposed terms for an extension, including payment of the property taxes, Plaintiffs did not pay the taxes. From March through August 2012, the parties continued discussions but were ultimately unable to reach a resolution. Consequently, on August 16, 2012, BOA sent a third default letter to Plaintiffs, and on September 25, BOA sent a final demand for payment.

On November 2, Plaintiffs filed this action in the Superior Court of Fulton County, Georgia. They aver claims for (1) fraud in the inducement with respect to the consolidated loan, (2) negligent violation of O.C.G.A. § 45-17-8, (3) fraud in the inducement with respect to the loan modification

3

agreement, (4) bad faith/willful and wanton misconduct, and (5) attorney's fees pursuant to O.C.G.A. § 13-6-11. That same day, BOA removed the action to this Court.

On November 20, BOA filed an answer and counterclaim. In its counterclaim, BOA seeks a judgment for the debt Plaintiffs owe, Plaintiffs' specific performance of paragraph 7 of the security deed and section 7.7 in the loan modification agreement, and attorney's fees and expenses pursuant to O.C.G.A. § 13-1-11 and the indemnity clause in the loan modification agreement. Plaintiffs did not file a reply to BOA's counterclaim, and on January 3, 2013, BOA filed a motion for entry of default. The next day, the Clerk entered default as to Plaintiffs on BOA's counterclaim.

On January 11, BOA filed a motion for default judgment on its counterclaim. On January 24, Plaintiffs filed a response to the motion as well as their own motion, in which they ask the Court to determine whether BOA's requested attorney's fees are reasonable.

Plaintiffs remain in default, and as of February 12, 2013, they owe BOA over $5 million, including attorney's fees and other collection costs.

On February 13, BOA filed a motion for summary judgment on Plaintiffs' claims.

## II.    Discussion

Review of Plaintiffs' briefs in opposition to BOA's motions shows that they do not oppose the motions in their entirety.  The Court first discusses what is unopposed and then what Plaintiffs dispute.

In its motion for default judgment, BOA seeks entry of judgment pursuant to Federal Rule of Civil Procedure 55(b) on count one of its counterclaim for the outstanding principal on the note, accrued interest, and reasonable attorney's fees and expenses.  In its motion for summary judgment, BOA seeks summary judgment on Plaintiffs' claims and a monetary judgment equal to the unpaid principal, accrued interest, reasonable attorney's fees, and property taxes and insurance coverage paid by BOA.

Plaintiffs state that they do not dispute that (1) they owe BOA the unpaid principal and accrued interest due under the promissory note, and (2) the annual interest rate is three percent.  Accordingly, the Court will grant BOA's motions to the extent that they seek a judgment awarding it

5

the outstanding principal and interest, with interest accruing at three percent per year.

Also, in their brief in opposition to BOA's motion for summary judgment, Plaintiffs have failed to respond to BOA's arguments that it is entitled to summary judgment on their claims. "[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." *Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004). Also, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001). Consequently, Plaintiffs have abandoned their claims. Accordingly, the Court will grant BOA's motion for summary judgment thereon.

Plaintiffs do challenge (1) BOA's request for judgment for the property taxes and insurance coverage BOA paid; (2) the portion of BOA's motion for default judgment that seeks judgment on its claims for specific performance on certain contract provisions; and (3) BOA's request for over $500,000 in attorneys' fees. Each argument is addressed below.

A.    Property Taxes and Insurance Coverage

Plaintiffs contend that BOA has failed to produce sufficient evidence showing that it in fact paid the outstanding property taxes and the insurance premiums.  Their contentions are without merit.  BOA has offered through the affidavit of Joseph R. Linus, a senior vice president, evidence that BOA paid $114,081.20 in overdue property taxes and $37,500 for insurance coverage after Plaintiffs let their fire insurance policy lapse. Plaintiffs have pointed to no evidence that creates a genuine dispute of fact as to these amounts.

However, BOA acknowledges in its reply brief in support of its motion for summary judgment that Plaintiffs did subsequently renew the insurance policy, and consequently they are entitled to a partial credit for the insurance premium BOA paid.  On April 12, BOA filed an update, through the affidavit of Jennifer Banta, one of its employees.  Banta testified that BOA paid $37,500 for insurance coverage on Plaintiffs' property, with an effective date of August 15, 2012.  In October 2012, Plaintiffs obtained new insurance coverage, which caused BOA's policy to be cancelled and BOA to be issued a refund of $31,642.84.  This reduces the judgment to which BOA is entitled for the insurance coverage to $5,856.16.  Accordingly, the Court

7

will enter judgment in favor of BOA and against Plaintiffs in the amount of $114,081.20 for unpaid property taxes and $5,856.16 for insurance coverage.

### B.    Specific Performance of Portions of the Loan Documents

As stated above, BOA seeks a default judgment that requires Plaintiffs to specifically perform three contract provisions: paragraph 7 of the security deed, section 7.7 of the loan modification agreement, and the indemnity clause in the agreement.  Plaintiffs contend that BOA is not entitled to this relief.

#### 1.    Paragraph 7 of the Security Deed and Section 7.7 of the Loan Modification Agreement

Paragraph 7 of the security deed requires Plaintiffs to take any actions necessary to correct any defects in the loan documents, and section 7.7 of the loan modification agreement requires Plaintiffs to take any actions necessary for BOA to have a perfected security interest in and title to the property.  Plaintiffs argue that BOA is improperly asking this Court to require that they abide by provisions they have never disputed as valid and that BOA has never sought to enforce.

8

Specific performance is one of three remedies for breach of contract, *PMS Constr. Co. v. DeKalb Cnty.*, 257 S.E.2d 285, 287 (Ga. 1979), and  BOA has not pled that Plaintiffs breached the provisions it seeks specific performance of.  Indeed, it admits that it has not asked Plaintiffs to perform under these provisions and doubts that it will have to.  In addition, specific performance is an equitable remedy that applies when "damages recoverable at law would not be an adequate compensation for nonperformance."  O.C.G.A. § 23-2-130.  BOA has not pled that specific performance is necessary because it lacks an adequate legal remedy.  Thus, the Court finds that BOA has not stated a claim for specific performance upon which relief may be granted; consequently, the entry of default judgment would be improper.  *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997) ("default judgment cannot stand on a [counterclaim] that fails to state a claim").

Perhaps BOA intended to plead the claim as a request for declaratory judgment that these provisions were enforceable against Plaintiffs. However, this request is not in the counterclaim, and more importantly, is moot in light of Plaintiffs' *in judicio* admission that paragraph 7 of the security deed and section 7.7 of the loan modification agreement are valid

9

and enforceable.  Accordingly, the Court will deny BOA's motions to the extent they seek default judgment on count two of its counterclaim.

### 2.    Indemnity Clause

With respect to the indemnity clause in section 7.16 of the loan modification agreement, Plaintiffs agree that it is valid and that they are bound thereby.  However, they contend that BOA is not entitled to default judgment on this clause if entry of default judgment "would actually terminate or seek to terminate any of Plaintiffs' claims against the Bank, as those claims all sound in fraud, deceit and gross negligence."  This argument is moot, though, in light of Plaintiffs' subsequent abandonment of their claims against BOA.

In addition, any relief sought by BOA pursuant to the indemnity clause in count three is moot in light of Plaintiffs' *in judicio* admission that the clause is enforceable against them.  Consequently, the Court will deny this portion of BOA's motion for default judgment.

Nonetheless, the Court does find that BOA is entitled to default and summary judgment on count three of its counterclaim to the extent that it seeks attorney's fees and expenses pursuant to O.C.G.A. § 13-1-11.  This is discussed below.

10

C.     Attorney's Fees

In both of its motions, BOA seeks attorneys' fees and expenses related to its collection efforts.  Count three of its counterclaim presents two bases for the fees and expenses (the indemnification clause and O.C.G.A. § 13-1-11), and BOA explains that it seeks them pursuant to the indemnification clause only in the event the fees provided by O.C.G.A. § 13-1-11 are not adequate.  As application of O.C.G.A. § 13-1-11 results in an award of over $500,000 in fees and expenses, relief under the indemnification clause is unnecessary, and the Court limits its analysis to the statutory basis for relief.

The security deed, note and loan modification agreement all state that BOA may seek attorney's fees and expenses related to Plaintiffs' default.  In count three of its counterclaim, BOA seeks the fees and expenses pursuant to the note and modification agreement.  The note provides,

> If [BOA] has required [Plaintiffs] to pay immediately in full as described above, [BOA] will have the right to be paid back by [Plaintiffs] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

The loan modification agreement provides that "[u]pon the occurrence of a default or Event of Default, [Plaintiffs] agree[] to pay any additional

11

attorneys' fees and others fees and expenses upon request by [BOA] in accordance with the terms of the Loan Documents," and that Plaintiffs "shall reimburse [BOA] for any reasonable costs and attorneys' fees incurred by [BOA] in connection with the enforcement or preservation of any rights or remedies under this Agreement."

Neither the note nor modification agreement provides for fees and expenses equal to a certain percentage of the outstanding principal and interest; consequently, O.C.G.A. § 13-1-11(a)(2) applies. Applying the formula in subsection (a)(2), BOA contends that it is entitled to recover over $500,000 in fees and expenses.

In their brief in opposition to the motion for default judgment, Plaintiffs contend that this amount is unreasonable and that under subsection (b)(1) they can ask the Court determine a reasonable amount. Accordingly, Plaintiffs filed a motion for determination of reasonable attorney's fees.

BOA responds that subsection (b)(1) does not apply because the former version of the statute applies to this case, which does not allow courts to determine whether the statutory amount is reasonable. The Court agrees.

12

On May 2, 2012, an amended version of O.C.G.A. § 13-1-11 went into effect.  Among other things, the amended statute changed subsection (b) to allow courts to determine whether the statutory amount—if greater than $20,000—was a reasonable amount of attorney's fees.  The legislature provided that the revised statute would apply only to contracts executed on or after July 1, 2011.  Act of May 2, 2012, 2012 Ga. Laws 725 (revising O.C.G.A. §§ 13-1-11 & 16-1-12).

Plaintiffs contend that because the loan modification agreement was entered into after July 1, 2011, the amended version of the statute applies, and they can ask the Court to determine a reasonable amount of attorney's fees.  However, accepting Plaintiffs' argument would mean that the loan modification agreement superseded the note, and thus its execution date controls.  This is contrary to the language of the loan modification agreement and the parties' intent.

"Where, after the execution of a promissory note, a renewal or new note is executed for the same debt, it is the general rule that the second instrument does not of itself operate as a . . . novation extinguishing the first note, unless there is an agreement between the parties to that effect." *Farmers & Merchants Bank of Charing v. Rogers*, 189 S.E. 274, 276 (Ga.

13

Ct. App. 1936); *see also Remler v. Coastal Bank*, 354 S.E.2d 79, 81 (Ga. Ct. App. 1986) (because guarantor failed to present any evidence that parties agreed that later note would act as novation to earlier note, earlier note was not cancelled).

Here, the agreement explicitly states that it "shall not be construed to be a novation of any of the Obligations owing to [BOA] under or in connection with any of the Loan Documents," which include the note. The agreement also provides that the "rights and remedies of [BOA] under this Agreement and the Loan Documents shall be cumulative and not exclusive of any rights or remedies which it would otherwise have." This language makes clear that execution of the agreement did not supersede or cancel the note. *See id.* at 80 ("when the language employed by the parties in their contract is plain, unambiguous, and capable of only one *reasonable* interpretation, . . . the language used must be afforded its literal meaning and plain ordinary words must be given their usual significance"). Consequently, the note's execution date determines which version of the statute applies—in this case the former version.

Because the note's execution date controls, the Court bases BOA's recovery of attorney's fees and expenses on the note's provision providing

14

for such, as opposed to the loan modification provisions.  Thus, the Court will deny Plaintiffs' motion and grant BOA's motions to the extent they seek attorney's fees under the note pursuant to O.C.G.A. § 13-1-11(a)(2).

III.    Conclusion

Plaintiffs' motion for a determination of reasonable attorney's fees [21] is DENIED.

Bank of America's motion for default judgment [20] is GRANTED IN PART and DENIED IN PART.  It is GRANTED with respect to counts one and three of its counterclaim and DENIED with respect to count two.

Bank of America's motion for summary judgment [25] is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

On or before May 3, 2013, at noon, Bank of America shall email to the Court (at alice_snedeker@gand.uscourts.gov) a proposed final judgment that awards BOA the outstanding principal under the note, accrued interest through May 3, the per diem rate of future interest at 3% per year (which shall not be calculated on interest), $114,081.20 for property taxes, $5,856.16 for insurance coverage, and attorney's fees consistent with O.C.G.A. § 13-1-11(a)(2).  BOA shall include with its email a spreadsheet that shows how it calculated the judgment amounts.

15

IT IS SO ORDERED this 19th day of April, 2013.

Timothy C. Batten, Sr.
United States District Judge

16